IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LAWRENCE SMALLS, et al., | : | No. 16-4883 |
| Defendants. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                                                October 18, 2017

J & J Sports Productions, Inc., sued Lawrence Smalls and Small Gnt, Inc., under the Cable Communications Policy Act, 47 U.S.C. §§ 553 and 605, for Defendants' alleged unlawful interception of J & J's pay-per-view television programming. Defendants failed to respond to the Complaint or make an appearance, and the Clerk of Court entered a default. Now before the Court is J & J's motion for default judgment. For the reasons given below, the Court grants the motion and awards damages of $2,200.

**I.    BACKGROUND**

This case is the latest round in an ongoing bout between pay-per-view licensors of professional boxing matches and commercial establishments intercepting such programming. J & J is a pay-per-view distributor and licensor. (Compl. ¶ 18.) J & J obtained exclusive nationwide commercial distribution rights to the September 13, 2014 boxing match between Floyd Mayweather Jr. and Marcos Maidana II, and then entered into sublicensing agreements with various bars and restaurants, granting them the right to display the fight for patrons. (*Id.* ¶¶ 16– 17.) The cost of a commercial sublicense ranged from $2,200 to $6,000 based on the capacity of

the establishment. (Pl.'s Aff. in Supp. of App. for Def. J. Ex. 2 [Rate Card]). The price for Defendants would have been $2,200. (*Id.*; Pl.'s Am. Br. at 13.)

Lawrence Smalls is identified as the president, director, and stockholder of Small Gnt, Inc. (Pl.'s Am. Br. at 5.) Small Gnt, in turn, owns Level 7 Hookah Bar & Grill. (Compl. ¶ 14.) J & J claims that although Defendants did not obtain a sublicense to show the Mayweather-Maidana match, a private investigator observed the match being shown at Level 7. (Pl.'s Am. Br. at 3.) Thus, J & J alleges that Defendants unlawfully intercepted the program. (Compl. ¶ 19.)

J & J filed this action against Smalls and Small Gnt on September 12, 2016. Smalls was properly served but failed to appear or respond to J & J's complaint, and the Clerk of Court entered a default on April 21, 2017. J & J then moved for default judgment. J & J's original brief in support of its motion contained numerous inaccuracies. With the Court's permission, J & J corrected those errors in an amended brief, which is now before the Court.

## II. STANDARD OF REVIEW

Once the Clerk of Court has entered a party's default, a district court may enter a default judgment against that party. Fed. R. Civ. P. 55(b)(2). Whether to grant a default judgment is left to the discretion of the district court; a party is "not entitled to a default judgment as of right." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 551 (E.D. Pa. 2009). After the entry of default, the well-pleaded factual allegations of the complaint are accepted as true. *Id.* at 552. However, "the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *Id.*

## III. DISCUSSION

### A. Default Judgment – The *Chamberlain* Factors

The Third Circuit has laid out three factors for courts to consider when determining whether to grant a default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether [the] defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). Considering the first factor, J & J will suffer prejudice if the Court does not grant its motion for default judgment because it "will have no other way to vindicate [its] claim" against Defendants. *See DISH Network L.L.C. v. Jones*, Civ. A. No. 12-1273, 2012 WL 2885933, at *2 (E.D. Pa. July 16, 2012). As to the second factor, where, as here, the defendant has failed to respond, "[c]ourts often weigh this factor in favor of granting default judgment." *Grove v. Rizzi 1857 S.P.A.*, Civ. A. No. 04-2053, 2013 WL 943283, at *3 (E.D. Pa. Mar. 12, 2013). Finally, as to the third factor, courts often consider a defendant's complete failure to respond—as is the case here—to be evidence of "bad faith" that weighs in favor of entry of default judgment. *Fed. Ins. Co. v. Secure Cargo Corp.*, Civ. A. No. 12–851, 2013 WL 1222653, at *3 (D.N.J. Mar. 25, 2013). Because each of the *Chamberlain* factors weighs against the Defendants, default judgment is appropriate, and the Court will move on to the substantive analysis of J & J's claim.

### B. Defendants' Liability Under § 553

J & J brought this action under 47 U.S.C. §§ 553 and 605. Both of these sections "prohibit the unauthorized interception and exhibition of communications." *J & J Sports Prods., Inc. v. Cruz*, Civ. A. No. 14-2496, 2015 WL 2376051, at *2 (E.D. Pa. May 18, 2015). However, §§ 605 and 553 apply to different conduct. *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001). "Section 553 prohibits the unauthorized interception and transmission of

cable communications, whereas § 605 prohibits the unauthorized interception and transmission of encrypted satellite cable programming." *Joe Hand Promotions, Inc. v. Yakubets*, Civ. A. No. 12-4583, 2013 WL 5224123, at *2 (E.D. Pa. Sep. 17, 2013) [*Yakubets I*]. Thus, a defendant cannot be held liable under both sections. *TKR Cable*, 267 F.3d at 207.

Because it has not shown evidence of a satellite violation, J & J requests judgment under § 553. (Pl.'s Am. Br. at 3–4.) J & J cites *Yakubets I*, in which the court applied a presumption in favor of § 553 at the default judgment stage where the plaintiff produced no evidence of a satellite violation, reasoning in part that cables are more easily hidden than satellite dishes. 2013 WL 5224123, at *4. The Court will follow this approach. Based on J & J's well-pleaded allegations and affidavits, it is entitled to damages under § 553.

In certain circumstances, individuals may be held vicariously liable for a violation of § 553. Courts in this district have imposed vicarious liability if the individual "(1) has the right and ability to supervise the violative activity, although . . . he need not know of the violative activity, and (2) has a direct financial interest in the violation. . ." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 296 (E.D. Pa. 2014) [*Yakubets II*]; *see also J & J Sports Prods., Inc. v. Hackett*, Civ. A. No. 16-2725, 2017 WL 3912403, at *5 (E.D. Pa. Sept. 6, 2017). Here, as the president and stockholder of Small Gnt, Smalls had the right and ability to supervise the activity and had a direct financial interest in the violation. Thus, he may be held vicariously liable for the violation by Level 7, and will be jointly and severally liable with Small Gnt for any damages.

**C. Damages**

Section 553 allows plaintiffs to choose to recover either actual damages or statutory damages. § 553(c)(3)(A). In addition, if the violation was willful and for purposes of commercial gain, plaintiffs can receive "enhanced" damages of up to $50,000. § 553(c)(3)(B). The statute

itself does not instruct courts as to how to determine statutory or enhanced damages. *Yakubets II*, 3 F. Supp. 3d at 274. Moreover, the Third Circuit has not established a formula for calculating damages under the statute. *Id.* Thus, the damages calculation has largely been left to the discretion of district courts. Here, J & J seeks statutory and enhanced damages.

### 1. *Statutory damages*

Courts have taken a variety of approaches to determining the appropriate level of statutory damages, with some attempting to approximate actual damages and others awarding greater damages as a means of deterrence. *Compare J & J Sports Prods., Inc. v. Moody*, Civ. A. No. 08-5225, 2009 WL 1515749, at *2 (E.D. Pa. May 28, 2009) (awarding $1,200, the cost of a sublicense), *with J & J Sports Prods., Inc. v. McCausland*, Civ. A. No. 10-1564, 2012 WL 113786, at *3 (S.D. Ind. Jan. 13, 2012) (obliging plaintiff's "urg[ing]" to adopt a flat-sum approach and award $10,000 to send a strong deterrent message). Unsurprisingly, J & J argues in favor of the latter approach, noting that "a primary goal of piracy awards is deterrence." (Pl.'s Am. Br. at 10.) It asserts that awarding statutory damages based on an estimation of actual damages alone would not serve the purpose of deterrence. (*Id.*) Based on this, J & J seeks statutory damages in the amount of $6,600, three times the cost of a sublicense.

J & J's argument, however, packs little punch. It is unclear what deterrence purpose would be served by inflating statutory damages that could not be equally—and more appropriately—served by awarding enhanced damages under the statute, as necessary. Another court in this district came to this conclusion after an exhaustive analysis of § 553. *See Yakubets II*, 3 F. Supp. 3d at 275–277. In that case, Judge Pratter determined that the most sensible reading of the statute is that the statutory damages provision simply provides plaintiffs with an alternative route of recovery where actual damages are difficult to prove—meaning statutory

damages should approximate actual damages. *Id.*; *see also Charter Comm. Ent. I, DST v. Burdulis*, 460 F.3d 168, 183 (1st Cir. 2006) (explaining that, given Congress's enactment of an enhanced damages provision in § 553, considering deterrence when determining statutory damages would lead to "absurd results"). The Court agrees with Judge Pratter's analysis. Thus, the Court will award $2,200 in damages, based on the cost of a sublicense fee.

   2.   *Enhanced damages*

J & J also requests $25,000 in enhanced statutory damages. However, the Court declines to award enhanced damages in this case. Although § 553 gives courts discretion to award enhanced damages for willful violations, it is not clear that enhanced damages are necessary in this case to curb piracy. While some courts in this district have simply applied a multiplier to statutory damages to determine enhanced damages, *e.g. Yakubets II*, 3. F. Supp. 3d at 26, one court recently declined to take this approach, arguing that it "would cause extreme hardship to a small business and would result in a gross overcompensation of Plaintiff despite its failure to produce any evidence of Defendants' commercial advantage or gain." *Hackett*, 2017 WL 3912403 at *5.

This reasoning is persuasive. While significant damages awards may well be an effective deterrent in piracy cases, the possibility of excessive harm to small businesses should also be considered. In this case, statutory damages alone, at $2,200, are substantial. And although the record has not been fleshed out enough to give any insight into the Defendants' financial situation, common sense suggests that the owner of a small establishment is unlikely to have deep pockets, meaning that this amount should be sufficient to deter Defendants, as well as owners of similar establishments, from future piracy. Moreover, as in *Hackett*, J & J has offered

no evidence of Defendants' financial gain from the interception. Therefore, the Court declines to award enhanced damages.

### D. Attorneys' Fees and Costs

Section 553 gives courts discretion to award attorneys' fees and costs to a prevailing plaintiff. § 553(c)(2)(C). J & J requests that it be given 14 days from the entry of judgment to submit a request for fees and costs. The Court will grant this request.

## IV. CONCLUSION

For the above reasons, J & J scores a technical knockout in the amount of $2,200. Lawrence Smalls and Small Gnt, Inc. are jointly and severally liable for this amount. An Order consistent with this Memorandum will be docketed separately.